HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRANSFAIR NORTH AMERICA INTERNATIONAL FREIGHT SERVICES, LLC., dba SCAN GLOBAL LOGISTICS and TRANSGROUP INTERNATIONAL,<br><br>Plaintiff,<br><br>v.<br><br>TOP SHELF MANUFACTURING, LLC dba EDSAL SANDUSKY,<br><br>Defendant. | Case No. 2:24-cv-01387-RAJ<br><br>ORDER |

## I.   INTRODUCTION

THIS MATTER comes before the Court on Plaintiff Transfair North America International Freight Services, LLC's ("Transfair") motion for summary judgment, Dkt. # 25, and Defendant Top Shelf Manufacturing, LLC dba Edsal Sandusky's ("Edsal") motion for summary judgment, Dkt. # 28.  The Court has reviewed the motions, the submissions in support of and in opposition to the motions, and the balance of the record. For the reasons set forth below, the Court **GRANTS** Transfair's motion for summary

ORDER - 1

judgment and **GRANTS IN PART AND DENIES IN PART** Edsal's motion for summary judgment.

## II. BACKGROUND

This cases arises from disputed charges incurred while transporting cargo overseas. For the reasons discussed below, the Court finds the parties' dispute is governed by terms and conditions printed on the reverse side of Transfair's bill of lading. These terms and conditions preclude Edsal's counterclaims, which were filed more than two year after delivery of the cargo at issue. Disputed issues of material fact preclude summary judgment on Transfair's breach of contract claim for payment of its invoices. Transfair's alternative quasi-contract claims are dismissed because a binding contract governs this dispute.

### A. Transfair's Claims

Transfair is a transportation intermediary that coordinates the delivery of cargo by ocean, truck, and rail transportation. Dkt. 27 ¶ 3. Edsal engaged Transfair to deliver cargo from Asia to Edsal's warehouses in Chicago. Dkt. # 29 ¶ 2; Dkt. # 26 at 14. This dispute centers on cargo delivered in 2021 and early 2022 through the Port of Vancouver. Dkt. # 26 at 22. Around this time, ports on the west coast of the United States were congested and delayed, and as a result, Transfair obtained Edsal's consent to transport Edsal's cargo through the Port of Vancouver. *Id.* at 14.

Transfair billed Edsal for transportation of the cargo, including $934,133.84 in disputed detention and demurrage charges. Dkt. # 27 ¶ 7; Dkt. # 26 at 38–45. Detention and demurrage charges are fees assessed by third-party ocean and train carriers when there is a delay in removing and returning cargo containers at ports. Transfair's standard practice is to pay these third-party fees and then invoice its customers for the amount

paid. Dkt. # 34 ¶¶ 3–4. During the course of the parties' relationship, Edsal paid for other detention and demurrage charges passed through by Transfair. Dkt. # 26 at 23. For the charges at issue, however, Edsal asked Transfair for backup documentation regarding how and why the charges were incurred. Dkt. # 29 ¶¶ 5–6. When Transfair failed to provide adequate documentation, Esdal objected to the charges and refused to pay. *Id.* It is unclear from the present record why the charges were incurred.

On July 30, 2024, Transfair filed suit against Edsal in King County Superior Court. Dkt. # 1-2. Transfair asserted a claim for breach of contract based on Edsal's refusal to pay the disputed charges. *Id.* ¶¶ 15–21. In addition, Transfair asserted three alternative causes of action for open book account, account stated, and quantum meruit. *Id.* ¶¶ 22–34; Dkt. # 32 at 20. On September 3, 2024, Edsal removed the case to federal court. Dkt. # 1.

### B.    Edsal's Counterclaims

On September 25, 2024, Edsal filed an amended answer and counterclaims. Dkt. # 9. In it, Edsal asserted for the first time two counterclaims against Transfair. First, it alleged Transfair caused delays in the shipment of Edsal's cargo resulting in lost sales and profits. *Id.* at 5–6. Second, it alleged Transfair breached its duty of care by selecting carriers not qualified to transport Edsal's cargo. *Id.* at 6–7. In addition, Edsal asserted an affirmative defense of setoff based on its lost sales and profits counterclaim. *Id.* at 4.

The parties agree that the last cargo shipment at issue in this dispute was delivered in February or March 2022. Dkt. # 26 at 30 (Edsal 30(b)(6) witness testifying "last container of subject cargo . . . [was] scheduled to arrive February 15th, 2022"); Dkt. # 27 ¶ 8 (Transfair employee stating last container from shipment to Edsal was made on March 10, 2022). Thus, Edsal's counterclaims were filed more than two years after the last cargo shipment.

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Id*. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Soremekun*, 509 F.3d at 984. Credibility determinations and the weighing of the evidence are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255.

### IV. DISCUSSION

#### A. Operative Contract

The Court begins its analysis by determining which contract applies to the parties' dispute. Transfair argues two different sets of terms and conditions apply, one printed on the reverse side of its invoices and one printed on the reverse side of its bill of lading. Dkt. # 25 at 12–15. Edsal argues it is unclear what set of terms apply to this dispute and thus the parties' contract is "too ambiguous to enforce on the current sparse record." Dkt. # 31 at 11. For the reasons discussed below, the Court finds the bill of lading terms apply.

Edsal was presented with several different terms and conditions throughout its relationship with Transfair. First, Edsal completed a "customer profile" when it applied to obtain credit from Transfair. Dkt. # 26 at 9–10. The bottom of that customer profile states: "The signature below acknowledges acceptance of the TransGroup Terms and Condition which are reflected on TransGroup waybills and online at www.transgroup.com . . . ." *Id.* at 32. The referenced terms and conditions are not in the record, and Edsal represents that "no set of terms and conditions are readily accessible from www.transgroup.com." Dkt. # 31 at 5. Accordingly, the Court does not find that these terms and conditions govern the parties' dispute.

Second, Edsal executed a "customs power of attorney" form. Dkt. # 26 at 34. The bottom of this document states: "Grantor [Edsal] acknowledges receipt of Transgroup International's Terms and Conditions of Service governing all transactions between the Parties." *Id.* The Court finds the power of attorney form does not bind Edsal to any terms and conditions because it merely requires Edsal to "acknowledge" receipt of such terms.

Third, Edsal's invoices appear to reference multiple sets of terms of conditions. The front side of the invoices state: "We perform all services subject to our Terms and Conditions of Service . . . Upon request, we will provide a copy of our Terms and Conditions of Service, which are also available online at https://www.scangl.com/about/north-america/." Dkt. # 34-1 at 2–3. The link leads to a webpage with additional links to multiple different terms and conditions. Dkt. # 31 at 5; Dkt. # 31-1 at 2. In addition, the reverse side of the invoices also contain terms and conditions, which are potentially different than those linked on the front side of the invoice. *See* Dkt. 34-1 at 2–3. Transfair appears to take the position that the terms printed on the reverse side of the invoices apply. It does not clearly articulate how these terms

should be read together with the terms linked on the front side of the invoice, or alternatively, why these terms should control over the linked terms.

Fourth, the reverse side of Transfair's bills of lading contain yet another set of terms and conditions. Dkt. # 27 at 1, 4. Here, the issue of which contract governs gets much clearer. Despite the potential confusion created by the various terms and conditions discussed above, the parties agree that the bill of lading terms and conditions govern the parties' relationship. *See* Dkt. # 28 at 8 (Edsal's motion stating "[Transfair's] bills of lading are indeed contracts, the primary contracts governing the relationship between [Transfair] and Edsal."); *id.* at 11 ("[t]he written contracts between [Transfair] and Edsal are [Transfair's] bills of lading"); Dkt. # 25 at 5–6, 13–15 (Transfair motion citing bill of lading as binding contract). Transfair introduces undisputed evidence that it used the same bill of lading terms and conditions from 2019 to March 2022, which covers the entirety of the period relevant to the parties' dispute. Dkt. # 27 ¶¶ 4, 8; Dkt. # 26 at 30.[1] The 2019–2022 bill of lading terms and conditions state: "The terms and conditions of this Bill of Lading supersede any other agreements with respect to the carriage of the goods." Dkt. # 27 at 4. Thus, even to the extent any of the previously discussed terms and conditions were binding and applicable to this dispute regarding the shipment of Edsal's cargo, they are superseded by the bill of lading terms. Taken together, the Court finds it is undisputed that the 2019–2022 Transfair bill of lading terms and conditions govern the parties' dispute.

The Court rejects Edsal's argument that the contractual scheme is so ambiguous that no contract is enforceable. Edsal cites only cases standing for the proposition that

---

[1] Transfair's opposition brief also references the bill of lading terms and conditions in effect as of March 2022, but states these terms are "not relevant to this dispute." Dkt. # 32 at 9.

ORDER - 6

summary judgment is inappropriate when contract terms are ambiguous. Dkt. # 31 at 11. For the reasons discussed, however, the Court does not find that the parties' contract is ambiguous. The bill of lading expressly states its terms supersede other applicable agreements. Dkt. # 27 at 4. Edsal does not make any arguments that this provision is ambiguous. Moreover, Edsal itself admits that the bill of lading terms govern the parties' relationship. Dkt. # 28 at 8, 11.

### B.     Applicable Law

Next, the parties dispute what law applies to interpretation of their contract. Transfair argues the terms on the reverse side of its invoices select Washington as the governing law. Dkt. # 25 at 11. But as determined above, those terms do not govern this dispute. Edsal does not affirmatively argue that any particular law applies; only that it is unclear what law should apply. Dkt. # 31 at 8–10.

The Court finds that federal contract law applies to this dispute. "The courts interpret and resolve disputes concerning maritime contracts . . . according to federal law." *Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007); *see also Starr Indem. & Liab. Co. v. Transfair N.A. Int'l*, No. 17-cv-697, 2018 WL 4002541, at *3 (W.D. Wash. Aug. 22, 2018) (applying federal law to interpret similar Transfair bill of lading terms). "[F]amiliar principles of contract interpretation" govern the construction of bills of lading. *Starrag*, 486 F.3d at 616. "Contract terms are to be given their ordinary meaning and whenever possible, the plain language of the contract should be considered first." *Id.* (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)) (cleaned up). "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Id.* (quoting *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004)).

### C. Transfair's Motion for Summary Judgment

#### 1. Edsal's Counterclaims

Turning to the substance of Transfair's motion, it argues Edsal's counterclaims are time-barred under the parties' contract. Dkt. # 25 at 12–15. The Court agrees.

Paragraph 8 of the bill of lading terms and conditions state:

> **Time Bar**. Carrier shall be discharged from all liability unless suit is brought within *twelve months after the date of delivery of the goods*, or after the date which the goods should have been delivered. Suit shall not be deemed brought against Carrier until jurisdiction shall have been obtained by service of process on Carrier.

Dkt. # 27 at 4 (emphasis added). It is undisputed that the last cargo shipment at issue was delivered in February or March of 2022. Dkt. # 26 at 30; Dkt. # 27 ¶ 8. Edsal filed its counterclaims on September 25, 2024, well after the one-year cutoff to file suit as set out in the bill of lading. Dkt. # 9. In its opposition, Edsal argues only that it is unclear what contract applies. Dkt. # 31 at 11. For the reasons discussed above, the Court rejects this argument. Edsal does not otherwise contest that the express time bar in the bill of lading terms and conditions preclude Edsal's counterclaims. *See id.* Accordingly, the Court finds it is undisputed that Edsal filed its counterclaims after the bill of lading's one year time bar. Its counterclaims are therefore dismissed.

#### 2. Edsal's Affirmative Defense

The parties further dispute the impact of dismissal of Edsal's counterclaims on its affirmative defense for setoff. Edsal argues that because Transfair's motion seeks only to dismiss Edsal's counterclaims and not its affirmative defense, Edsal's "claims will remain in the litigation regardless of the outcome" of Transfair's motion. *Id.* at 2. In reply, Transfair argues Edsal's affirmative defense for setoff "is time-barred just like

Edsal's counterclaims." Dkt. # 37 at 6.  While not a direct subject of Transfair's motion, the Court will address the parties' dispute to streamline the remaining issues for trial.

Setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996) (quoting *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995)).  Through its affirmative defense, Edsal asserts that any amount it owes to Transfair for unpaid invoices should be setoff by the amount Transfair owes to Edsal based on Edsal's counterclaims.  Edsal's affirmative defense necessarily requires that Edsal prevails on its counterclaims. Otherwise, there would be nothing to setoff.  With its counterclaims now dismissed, Edsal cannot prevail on its setoff affirmative defense because it cannot establish that it is owed any debt from Transfair.  *See Microsoft Corp. v. Hon Hai Precision Indus. Co.*, No. 19-cv-1279, 2020 WL 5128629, at *16 (N.D. Cal. Aug. 31, 2020) ("because the Court granted [plaintiff's] motion to dismiss [defendant's] counterclaims with prejudice, there can be no 'setoff' for any damages awarded pursuant to the counterclaims.").

        **D.**        **Edsal's Motion for Summary Judgment**

                **1.**        **Breach of Contract**

Next, the Court turns to Edsal's motion for summary judgment.  Edsal argues Transfair's breach of contract claim should be dismissed because (1) the parties' contract does not require Edsal to pay for the disputed detention and demurrage charges and (2) Transfair does not have sufficient evidence to support the charges.  The Court disagrees.

As to Edsal's first argument, Transfair rebuts it by identifying two bill of lading provisions requiring Edsal to pay the charges at issue.  Dkt. # 32 at 15.  Specifically,

paragraph 14 of the bill of lading terms and conditions states, in relevant part:

> **Route of Carriage: Matters Affecting Performance** . . . If at any time the carriage is or is likely to be affected by any *hinderance, risk, delay, difficulty or disadvantage of any kind* (including the condition of the goods), whenever and however arising (whether or not the carriage has commenced) Carrier may . . . abandon the carriage . . . [or] continue the carriage. In any event the Carrier shall be entitled to full freight charges on goods received for carriage and *Merchant shall pay any additional costs resulting from the above mentioned circumstances*.

Dkt. # 27 at 4 (emphasis added). Paragraph 15 states:

> **Freight.** Freight shall be deemed fully earned on receipt of the goods by Carrier and shall be paid whether or not the cargo was lost, damaged, abandoned, destroyed or disposed of. Merchant shall be liable to Carrier for freight and *all other charges*.

*Id.* (emphasis added). In a different prior case, this Court interpreted these same Transfair bill of lading paragraphs to "expressly allocate[] to the 'Merchant' the additional freight costs associated with 'any hinderance, risk, delay, difficulty, or disadvantage of any kind' in the delivery of the cargo." *Starr*, 2018 WL 4002541, at *3. Edsal does not dispute it is the "Merchant" under the bill of lading. It also offers no reason why the Court should deviate from its prior interpretation of paragraphs 14 and 15. Accordingly, the Court finds Edsal is contractually required to pay Transfair additional costs, including detention and demurrage charges, resulting from "any hinderance, risk, delay, difficulty or disadvantage of any kind" in the delivery of Edsal's cargo.

Edsal next argues that even if a contractual obligation exists, Transfair has insufficient evidence to support the charges it invoiced to Edsal. Dkt. # 28 at 9–10; Dkt. # 35 at 5–10. Edsal argues Transfair failed to produce most of the underlying invoices that third-party ocean and train carriers issued to Transfair, which Edsal contends is

necessary to support the charges that Transfair then invoiced to Edsal. *Id.* In response, Transfair argues it does not need to rely on the underlying third-party invoices to prove its case. Dkt. # 32 at 18–20. Instead, Transfair argues it is sufficient for it to prove, through witness testimony and documents, that its own invoices to Edsal reflect the amount Transfair has already paid the third parties. *Id.* In support of its opposition, Transfair submitted a declaration from Fred Gobeille, its Vice-President of Operations for Canada. Dkt. # 34. Mr. Gobeille's declaration explains Transfair's standard practice for passing through vendor costs to its customers, attaches examples of Transfair invoices to Edsal (including the underlying vendor invoices), and attaches Transfair's statement of account reflecting the total outstanding charges at issue in this case. *Id.* The Court finds Transfair has presented sufficient evidence to create an issue of material fact regarding the charges it seeks to recover from Edsal.

Edsal also argues Transfair's invoices are inadmissible hearsay. Dkt. # 35 at 8–10. Under the business records exception to hearsay, records are admissible if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). "[C]ourts have routinely found that commercial invoices and other similar documents are admissible under the business records exception." *Scully v.*

*Cashman Equip. Co.*, No. 15-cv-9990, 2016 WL 4149961, at *3 (C.D. Cal. Aug. 2, 2016). Mr. Gobeille's declaration states the attached invoices were created at or near the time of Transfair's payment to the third-party vendors by a person of knowledge, and that the records were created and stored in the course of regularly conducted business. Dkt. # 34 ¶ 4. Edsal does not show any indication that the invoices lack trustworthiness. Thus, all FRE 803 requirements are met and Transfair's invoices are admissible under the business records exception. The case cited by Edsal is distinguishable. In *NLRB v. First Termite Control Co., Inc.*, 646 F.2d 424 (9th Cir. 1981), the court found a witness was not qualified to authenticate a freight bill prepared by a different company. *Id.* at 429–30. Here, Transfair seeks to introduce its own invoices.

In sum, there is an issue of material fact as to whether at trial Transfair can substantiate its invoices to Edsal. Edsal's motion for summary judgment on Transfair's breach of contract claim is therefore denied.

### 2. Other Claims

Edsal also moves for summary judgment on Transfair's causes of action for open book account, account stated, and quantum meruit. Dkt. # 28 at 15–19. In its response brief, Transfair confirms it asserted these claims as alternative theories "in the event the Court determined that some part or all of the damages were not governed by written contract." Dkt. # 32 at 20. It further concedes that "[i]f the Court finds that Transfair has properly brought the breach of contract claims pursuant to written contracts," then these alternative causes of action are "inappropriate." *Id.* Because the Court finds this dispute is governed by the bill of lading terms and conditions, and in light of Transfair's concession, the Court dismisses Transfair's alternative claims.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Transfair's motion for summary judgment, Dkt. # 25, and **DISMISSES** Edsal's counterclaims **WITH PREJUDICE**.

The Court **GRANTS IN PART AND DENIES IN PART** Edsal's motion for summary judgment, Dkt. # 28, as follows: Transfair's second, third, and fourth causes of action are **DISMISSED WITH PREJUDICE**. The remainder of the motion is **DENIED**.

The Court **ORDERS** that the parties meet and confer regarding a possible resolution of the remaining issues for trial. Mediation is not required but strongly encouraged.

Dated this 9th day of October, 2025.

*[signature]*

The Honorable Richard A. Jones
United States District Judge