THE HONORABLE RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRANSFAIR NORTH AMERICA
INTERNATIONAL FREIGHT
SERVICES, LLC., dba SCAN GLOBAL
LOGISTICS and TRANSGROUP
INTERNATIONAL,

Plaintiff,

v.

TOP SHELF MANUFACTURING, LLC
dba EDSAL SANDUSKY,

Defendants.

Case No. 2:24-cv-01387-RAJ

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

On July 30, 2024, Plaintiffs Transfair North America International Freight Services, LLC, dba SCAN Global Logistics and Transgroup International (collectively, "Transfair") filed this action in King County Superior Court, alleging a breach of contract and three other causes of action against Defendant Top Shelf Manufacturing, LLC dba Edsal Sandusky ("Edsal"). The action was then removed. Dkt. # 1. On September 6, 2024, Edsal filed its Answer. Dkt. # 3. Edsal amended its Answer and filed a Counterclaim alleging two causes of action for damages on September 25, 2024. Dkt. # 9. Transfair filed its Answer to the Counterclaim on October 30, 2024. Dkt. # 19. Transfair filed a Motion for Partial Summary Judgment on August 5, 2025. Dkt. # 25. Edsal filed a Cross-

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 1

Motion for Summary Judgment on August 5, 2025. Dkt. # 28. The Court granted Transfair's Motion and dismissed Edsal's Counterclaims on October 9, 2025. Dkt. # 40. The Court granted in part Edsal's Motion for Summary Judgment and dismissed Transfair's causes of action other than the breach of contract claim. *Id.* The sole issue remaining for trial was Transfair's breach of contract claim. *Id.*

The Court heard this matter in a bench trial on January 12 – 14, 2026. Dkts. # 53, 54, 60. Transfair called the following witnesses in its case in chief: Edsal Controller Jason Wilkerson, Transfair Canada Vice-President of Operations Fred Gobeille, and expert Daniel Gardner. *Id.* Edsal called Mr. Wilkerson as a witness during its case-in-chief. *Id.* No other witnesses were called. *Id.* Both parties submitted the deposition designations of the respective opposing party Rule 30(b)(6) depositions, and the transcripts were admitted into evidence. Dkts. # 50, 52; Dkt. # 62, 11:24-12:5 (Wilkerson transcript); Dkt. # 64, 403:11-18 (Santillan transcript). Before trial, the Court issued a written Order on Transfair's Motions in Limine. Dkt. # 51. During trial, the Court issued a written Order on Transfair's offer into evidence of certain third-party business records and Edsal's objections thereto. Dkt. # 57.

Pursuant to Federal Rule of Civil Procedure 52, the Court enters the following findings of fact and conclusions of law:

## I.      **FINDINGS OF FACT**

### A.      **THE PARTIES**

1.      Transfair was a service provider to Edsal and acted as a transportation intermediary and non-vessel operating common carrier ("NVOCC"). Admitted Fact No. 1, Dkt. # 47 (Proposed Pre-trial Order); Dkt. # 64, 310:17-20.

2.      Edsal is a cargo owner / merchant receiving cargo and cargo transportation services and acting as the shipper and / or consignee. Ex. 3 (T&C, Definitions), Ex. 4 (HBL, Definitions); Ex. 9, p. 1 ("shipper / consignee); Dkt. # 50, Wilkerson deposition, 22:16-19,

51;14-52:6.

3.      Edsal imports thousands of shipments each year with the assistance of service providers, including Transfair. Admitted Fact No. 2, Dkt. # 47.

4.      The cargo at issue in this case was containerized products ordered by Edsal from overseas entities for its business purposes. Dkt. # 62, 21:23-22:1, 37:25-38:3.

5.      Between October 2021 and March 10, 2022, Edsal engaged Transfair for the international ocean shipping services at issue in this lawsuit. Admitted Fact No. 3, Dkt. # 47.

6.      As an NVOCC operating under intermodal bills of lading, Transfair facilitated the subject transportation; and engaged other transportation and logistics service providers to physically transport Edsal's cargo. Admitted Fact No. 5, Dkt. # 47.

7.      Transfair's House Bill of Lading ("HBL") was published by https://rates.descartes.com an FMC tariff publisher, and in effect at all material times in this matter. Ex. 5; Wilkerson deposition, 106:12-23.

**B.      CONTRACT FORMATION / TERMS**

**HBL**

8.      When Edsal hired Transfair to make cargo transportation arrangements for overseas cargo from the cargo manufacturer to Edsal's facilities in the U.S., Transfair would create an original Combined Transport Bill of Lading for the requested shipment and send a copy to Edsal. See, e.g., Ex. 9, pp. 6 (dated 7/3/21), 58 (dated 7/8/21).

9.      On the reverse side of the Bill of Lading were Transfair's HBL terms and conditions. Ex. 4, Dkt. # 50, Wilkerson deposition, 99:25-100:8.

10.     Transfair's HBL states:

… 14. Route of Carriage: Matters Affecting Performance - The intended carriage shall not be limited to the direct route but shall include any deviation for any purpose connected with the service, including maintenance of vessel and crew. If at any time the carriage is or is likely to be affected by

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 3

any hindrance, risk, delay, difficulty or disadvantage of any kind (including the condition of the goods), whenever and however arising (whether or not the carriage has commenced) Carrier may:

…

b) Without prejudice to the Carrier's right subsequently to abandon the carriage under a) above, continue the carriage.

In any event the Carrier shall be entitled to full freight charges on goods received for carriage and Merchant shall pay any additional costs resulting from the above mentioned circumstances.

15. Freight - Freight shall be deemed fully earned on receipt of the goods by Carrier and shall be paid whether or not the cargo was lost or damaged, abandoned, destroyed or disposed of. *Merchant shall be liable to Carrier for freight and all other charges.*

…

24. Validity – … b) The terms and conditions of this Bill of Lading supersede any other agreements with respect to carriage of the goods. No servant or agent of Carrier shall have the power to waive or vary of the terms hereof unless such waiver or variation is in writing and is specifically authorized or subsequently ratified in writing by Carrier.

Ex. 4 (emphasis added).

11.    Transfair's expert testified that the term "freight and all other charges" as used in paragraph 15 of the HBL includes detention and demurrage. Dkt. # 64, 378:4-379:2, 380:2-25, 382:6-22.  No witness testified to an alternative interpretation.

12.    With respect to the cargo transportation services at issue in this matter, the parties did not dispute that Edsal was the merchant in Transfair's HBL. Ex. 4 (Definitions), Ex. 9, p. 6, Dkt. # 50, Wilkerson deposition, 22:16-19.

13.    Edsal did not communicate any objection to SCAN concerning its HBL terms and conditions during the transport of cargo. Dkt. # 62, 28:17-20; Dkt. # 50 Wilkerson transcript, 100:18-101:8.

14.    All of the transportation services provided by Transfair to Edsal that are in dispute in this matter were provided under the terms of the HBL. Exs. 3, 4.

**Terms & Conditions ("T&C")**

15.    Transfair's T&C were printed on a second page attached to all of its invoices.

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 4

Dkt. # 50, Wilkerson deposition, 41:16-22, see, e.g., Ex. 9, pp. 2, 55.

16.    Edsal agreed to comply with Transfair's T&C. Dkt. # 50, Wilkerson deposition, 40:23-41:2, 50:14-19, 69:3-70:3.

17.    Transfair's terms and conditions state that:

These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer." *In the event the Company renders services and issues a document containing Terms and Conditions governing such services, the Terms and Conditions set forth in such other document(s) shall govern those services.*
…
13. Costs of Collection. In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 18% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to by Company.
…

Ex. 3 (emphasis added).

18.    No one at Edsal communicated to Transfair any objection to the Transfair T&C during the transport of the cargo. Dkt. # 50, Wilkerson deposition, 43:15-44:14.

19.    Edsal negotiated payment terms in the T&C on the Transfair invoices to the end of the month, plus 90 days. Dkt. # 62, 29:14-17; Dkt. # 40, 43:10-44:14.

## C.    CONTRACT PERFORMANCE AND DELAYS

20.    The services provided by Transfair to Edsal included picking up Edsal's cargo overseas, arranging for the cargo's transport, and delivering the cargo to Edsal's designated warehouse in the U.S. Dkt. # 50, Wilkerson deposition, 52:23-53:6.

21.    When Edsal hired Transfair to make cargo transportation arrangements for particular overseas cargo from the cargo manufacturer to Edsal's facilities in the U.S., Transfair would create an original Combined Transport Bill of Lading for the requested shipment and send a copy to Edsal. 132:9-13; Dkt. # 50, Wilkerson deposition, 24:19-25:8.

22.    On the reverse side of the Bill of Lading were Transfair's HBL terms and

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 5

conditions. Dkt. # 50, Wilkerson deposition, 99:25-100:8.

23.    The cargo shipments at issue occurred during extraordinary West Coast/Port of Vancouver congestion (2021–2022) with widespread delays and industry-impacting conditions. Associated with the port congestion were shortages of containers, truckers, and chassis, and restrictions on accessing terminals. Cargo pickups were delayed. Deliveries were delayed. Container returns to the terminals were delayed. The congestion was associated with shortages of chassis and trucks, delays in container movement, and restrictions on access to the ocean terminals. Dkt. # 62, 121:3-122:4, 125:3-13, Dkt. # 64, 314:24-320:15.

24.    Edsal was informed of the delays by way of frequent (daily or weekly) updates from Transfair regarding the location and status of containers and documentation of delays. Dkt. # 62, 126:16-127:1, 160:6-21.

25.    Delays in transporting containers create opportunities for the carriers and terminals (here, primarily Mediterranean Shipping Co. or MSC, Canadian Railroad or CN, and Global Container Terminal or GCT) to charge the shipper (here, both Transfair and Edsal with respect to the carrier) expenses such as detention, demurrage, and storage. Those expenses accrued here. Ex. 9, Dkt. # 62, 26:8-23, 147:18-148:12.

26.    If Transfair failed to timely pay an invoice from an ocean carrier, the delay in payment could have resulted in a delay in delivery. If Transfair contested a particular invoice from the carrier or terminal, the time taken to consider the dispute could have caused a delay in the container being delivered to Edsal and the ocean carrier could be entitled to additional expenses before the container is released. Dkt. # 62, 157:21-158:2,  171:5-18, 185:10-21.

27.    Edsal knew that the ocean carrier could hold the cargo, increasing the demurrage and detention, until the disputed expense was paid. By paying (as an advance on Edsal's credit) the additional cost invoices by the terminals and carriers, Transfair avoided

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 6

delaying the delivery of Edsal's cargo, which was a benefit received by Edsal because of the Transfair payments. *See* Dkt. # 50, Wilkerson deposition 121:23-122:17, Dkt. # 64, 363:17-364:8.

28.    Transfair paid all the carriers' freight charges, demurrage charges, detention charges, and delay charges to MSC and the other ocean carriers at issue in this case. Dkt. # 62, 161:5-25; 185:23-186:7.

29.    The invoice number for the most recent provision of cargo transportation at issue in this case is 63621-10209, which invoice was dated 10/29/2021, and which cargo arrived at Edsal's facility 2/15/22. Dkt. # 50, Wilkerson deposition, 174:14-19.

## D.    VETTING OF UNDERLYING VENDOR INVOICES BY TRANSFAIR

30.    When Transfair received third-party invoices related to delays in container transportation, its operations team reviewed and vetted the invoices before approving them for payment and to be passed through to its customer, Edsal, for reimbursement. Dkt. # 62, 154:19-158:2, 162:14-163:8, 171:5-173:21, Dkt. # 63, 257:5-260:22.

31.    Transfair proactively disputed demurrage charges assessed by MSC and, because of Transfair's actions, MSC issued a refund/credit of approximately $249,000 that was applied to reduce Edsal's costs. Dkt. # 62, 187:24-188:13.

32.    Transfair acted in good faith on behalf of Edsal when moving containers and trying to mitigate charges. Dkt. # 64, 396:25-397:22.

## E.    TRANSFAIR INVOICES

33.    Edsal did not raise as a defense that any of the cargo shipments at issue in this case were not delivered and, by implication, accepted delivery of all of the shipments for which there are disputed charges in this matter. Amended Answer and Counterclaim, Dkt. # 9.

34.    Transfair issued dated invoices that identified the details of the invoiced service(s) or pass-through charges and included the supporting documents related to the

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 7

shipment in question and the service(s) and / or charges. *See* Ex. 9, Exs. 31 – 64.

35.     The documentation provided by Transfair was adequate to provide Edsal with the information it needed to reconcile, pay and provide cash application instructions to Transfair. Exs. 6, 9 – 10, 31 – 64, 128 – 129.

## F.     BREACH OF CONTRACT DUE TO FAILURE TO PAY INVOICES

36.     Edsal did not pay Transfair invoices in the net amount of $934,133.84. Ex. 6 (SOA). Transfair issued 244 invoices and credit memos, which are reflected on the SOA. Ex. 6. The SOA also references 17 payments received from Edsal that were not applied to particular invoices and lists three credit memos at the end of the statement related to currency exchange rates. *Id.* The SOA reflects invoices totaling $1,690,227.18. Ex. 129 (spreadsheet listing details of charges on invoices), cell C829. Applying the credit memos and unapplied payments listed in the SOA toward the balance yields an amount owed by Edsal to Transfair of $934,133.84. Ex. 129, cell C835.

37.     During discovery, Edsal explained that its justification for not paying the invoices was because Transfair had not demonstrated that (1) "all such charges were properly invoiced to and paid by" Transfair, (2) "fault and responsibility for such charges is not [Transfair's] and/or that of its agents or contractors; and/or (3) Edsal "is ultimately responsible for such charges." Ex. 22.

38.     Before trial, the Court determined that "as a contractual matter, HBL paragraphs 14 and 15 impose payment obligations on Edsal regardless of whether any particular party caused the charges or whether the charges were adequately justified. Thus, if Transfair shows the disputed charges fall within the scope of HBL paragraphs 14 and 15, then additional issues of cause, fault, responsibility, and justification become irrelevant (subject to Edsal's good faith defense …)." Dkt. # 51, p. 3.

## G.     PROVEN DAMAGES

39.     The cargo at issue in this dispute over cargo-related charges went through the

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 8

Port of Vancouver. Dkt. # 32, 32:14-18; Dkt. # 50, Wilkerson deposition, 104:22-105:19. Edsal conceded that all non-Vancouver cargo invoices identified in Transfair's Statement of Account ("SOA") were supposed to be paid. Dkt. # 50, Wilkerson deposition, 104:22-105:19. Edsal further conceded that on Ex. 129, the "Non-Vancouver Transload" (NVTL) invoices were reflected on Ex. 129, lines 165 - 244 as identified in Column A, "reference number". Dkt. # 62, 32:14-33:24, 119:21-120:3, *see also*, Ex. 129 (Column A, Column L).

40.    Lines 3, 12, 13, 25, 34 – 37, 43, 45, 57, 63, 78, 83, 109, 155, 157, 160 of Ex. 129 represent unapplied credits and are not in dispute. Ex. 128, 129.

41.    Lines 245 – 247 of Ex. 129 represent credit memos in Edsal's favor and are not in dispute. Ex. 128, 129.

42.    At some point prior to February 2024, Edsal calculated that it only owed Transfair $287,501.96 and paid that to Transfair. *See* Ex. 6 (referencing that unapplied payment on p. TG-000518 (fourth line from the bottom). It is listed as an unapplied payment. *Id.* In subsequent remittance advice, Edsal necessarily acknowledged that the invoices at lines 1, 2, 4, 6, 8 – 10, 42, 46 – 50, 58, 64, 75, 77, 105, 124, 125, 144, 152, 156, 161, 162, 164 of Ex. 129 were payable. Ex. 10, Dkt. # 62, 14:3- 18:2 (Edsal's witness testified that the invoices had been "paid" by virtue of its unapplied payment).

43.    After making the February 2024 payment addressed in Ex. 10, Edsal further analyzed the invoices listed in the SOA and prepared Ex. 128 and categorized each invoice or portion of invoice variously as "settled", "accepted," or "disputed" and further distinguished invoices as "sufficient support" or "insufficient support". *See* Ex. 128.

44.    By characterizing invoices as "settled" or "accepted" on Ex. 128, the Court finds that the invoices at lines 11, 14 (partial), 18, 19, 31 (partial), 32, 44, 52, 53, 55 (partial), 69, 76, 113, 115 (partial), and 148 (partial) of Ex. 128 are not in dispute.

45.    By characterizing invoices as "sufficient support" lines 7, 14 (partial), 16 (partial), 21, 22, 24, 26 – 30,  38 – 41, 51, 55 (partial), 56, 59 – 62, 65 (partial), 66, 68, 72,

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 9

73, 79, 87 (partial), 89, 94, 97, 99, 100, 103, 104, 108, 110, 111, 115 (partial), 116, 117, 119 (partial), 120, 126, 127, 130, 131, 134, 136, 138, 141 (partial), 149, 150, 158, and 163 on Ex. 128, the Court finds that Edsal has conceded that the documentation provided by Transfair sufficiently supported the invoiced amounts and should have been paid.

46.     Of the category of those invoices described as "insufficient support", many of such invoices involved the use of credit card payments to the GCT terminal. Ex. 128. Edsal described the support provided as "Provided backup is credit card authorization to GCT in CAD. Cannot determine exchange rate used, if any, or justification for payment." *Id.* The Court heard testimony that the terminal in question provided Transfair with no additional documentation for the charges. Dkt. # 62, 100:4-101:9, Dkt. # 64, 363:17-364:8. The Court notes that the exchange rate between the Canadian dollar figure on the credit card authorization form and the U.S. dollar amount on the invoices is readily ascertainable. *See* Dkt. # 62, 189:18–190:10.   Transfair provided admissible evidence and testimony that the invoices at lines 15, 20, 23, 33 (partial), 80, 84, 87 (partial), 93, 96, 102, 106, 107 (partial), 112, 128, 132, 137, and 159 of Ex. 129 were sufficiently supported and should have been paid.

47.     Of the remaining invoices in the Edsal category of "insufficient support" on Ex. 129, Transfair provided admissible evidence and testimony that the invoices at lines 5, 16 (partial), 17, 67, 70, 71, 74, 88, 90 - 92, 95, 98, 101, 118, 123, 142, 143, 146, 151, and 153 of Ex. 129 were sufficiently supported and should have been paid.

48.     Transfair conceded in argument that it did not have sufficient support for lines 31 (partial), 33 (partial), 54, 65 (partial), 81, 82, 85, 86, 114, 119 (partial), 121, 122, 133, 135, 139, 140, 141 (partial), 145, 147, 148 (partial), and 154 of Ex. 128. These invoices totaled $53,131.72. After subtracting the conceded amounts from Transfair's claim, and accounting for the unapplied payments and credits, the remaining amount of the claim is $875,056.50 owed by Edsal to Transfair.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 10

49.     Edsal did not challenge Transfair's calculation of the amount owed by Edsal to Transfair.

50.     Edsal did not offer any evidence of an affirmative defense to the breach of its obligation to pay the owed amounts to Transfair.

## H.     PRE-JUDGMENT INTEREST AND ATTORNEYS' FEES

51.     While the T&C did not apply to the transportation of the cargo in question, it did apply to the extension of credit by Transfair to Edsal and, by Edsal's admission, to the payment terms for Transfair's invoices to Edsal. Ex. 3; Dkt. # 50, Wilkerson deposition, 43:10-44:14; Dkt. # 62, 29:14-17.

52.     The T&C includes a prevailing party provision that entitles Transfair to recover all costs of collection, including reasonable attorney's fees and interest at 18% per annum or the highest rate allowed by law. Ex. 3, paragraph 13. [1]

---

[1] After trial, the Court requested supplemental briefing from the parties regarding the availability of attorneys' fees in this case. Dkt. # 69. After review of the parties' supplemental briefs, the Court adopts Transfair's position that "the HBL governs ocean carriage services, and the . . . T&C governs the credit and collection terms that apply when TRANSFAIR extends credit, issues invoices, and collects unpaid amounts." Dkt. # 71 at 6. The T&C states: "In the event the Company renders services and issues a document containing Terms and Conditions *governing such services*, the Terms and Conditions set forth in such other document(s) shall *govern those services*." Ex. 3 (emphasis added). Similarly, the HBL states: "The terms and conditions of this Bill of Lading supersede any other agreements with respect to the *carriage of goods*." Ex. 4 (emphasis added). Thus, the T&C and HBL may operate together to govern the parties' relationship, with the HBL specifically governing the carriage of goods.

Edsal argues the "law of the case" establishes that the HBL supersedes the T&C for all purposes. Dkt. # 72 at 2–4. This is incorrect. In its summary judgment order, the Court found "even to the extent any of the previously discussed terms and conditions were binding and applicable to this dispute *regarding the shipment of Edsal's cargo*, they are superseded by the bill of lading terms." Dkt. # 40 at 6 (emphasis added). This finding was limited to the HBL's applicability to the "shipment of Edsal's cargo," or, in other words, the "carriage of goods." On summary judgment, the primary issue before the Court was Edsal's liability for breach of contract, which only required analysis of the HBL. The Court therefore did not have occasion to address whether another agreement governed the availability of attorneys' fees in this case. In addition, the "law of the case doctrine does not . . . bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018). Thus, even to the extent the summary judgment order could be read as finding the HBL supersedes the T&C for all purposes—which was not the Court's intent— the Court is not precluded from reconsidering that finding.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 11

## II.    CONCLUSIONS OF LAW

### A.    BREACH OF CONTRACT

1.    Admiralty jurisdiction exists because the HBL is a maritime contract. Dkt. # 47, p. 1.

2.    A claim for breach of a maritime contract is treated in much the same manner as a claim for breach of any other contract. *Gulf Island Shipyards, LLC v. Mediterranean Shipping Co. (USA), Inc.*, 665 F. Supp. 3d 472, 481 (S.D.N.Y. 2023). "To establish breach of a maritime contract, a plaintiff must demonstrate "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *W. Towboat Co. v. Vigor Marine, LLC*, 544 F. Supp. 3d 1100, 1116 (W.D. Wash. 2021) (citations omitted), aff'd, 85 F.4th 919 (9th Cir. 2023).

3.    It is undisputed that Edsal, the consignee, accepted delivery of the cargo shipped under Transfair's bill of lading, and as a matter of law, by accepting delivery, Edsal became liable for the full amount of freight charges. *See States Marine Int'l, Inc. v. Seattle-First Nat'l Bank*, 524 F.2d 245, 248 (9th Cir. 1975), citing *Pittsburgh C.C. & St. Louis R.R. v. Fink*, 250 U.S. 577, 581, 63 L. Ed. 1151, 40 S. Ct. 27 (1919) ("The weight of authority seems to be that the consignee is *prima facie* liable for the payment of the freight charges when he accepts the goods from the carrier.") and *Arizona Feeds v. Southern Pacific Transp. Co.*, 21 Ariz. App. 346, 353, 519 P.2d 199, 206 (1974) ("The mere designation in the bill of lading of the consignee as the one liable for the freight charges does not create a contractual relationship between the carrier and the consignee, rendering the latter liable therefor, but rather, the consignee becomes liable therefor when an obligation arises on his part from presumptive ownership, acceptance of goods and the services rendered, and the benefits conferred by the carrier for such charges.").

4.    The remedy for failure to make payments under a maritime contract is the amount of the unpaid charges, as specified in the terms of the parties' agreement. *See*

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 12

*Shugart v. GYPSY Off. No. 251715*, No. 14-cv-1923, 2016 WL 51407, at *6 (W.D. Wash. Jan. 4, 2016) (awarding plaintiff repairman cost of repairs at an hourly rate even though vessel owner felt final bill was not reasonable). Here, Transfair has proven that Edsal failed to pay invoices in the amount of $875,056.50.

5.    It is Transfair's burden to show the disputed charges were actually incurred for the transport of Edsal cargo within the scope of HBL paragraph 14 or 15. Defendant argues that paragraph 14 of the HBL does not apply to the disputed invoices. The Court need not reach the issue because Transfair's expert presented unrebutted evidence that the terms of paragraph 15 of the HBL apply to detention and demurrage charges, which are the subject of the disputed invoices. *See* Dkt. # 64, 378:4-379:2, 380:2-25, 382:6-22. Transfair has met its burden to show that Edsal breached the HBL by failing to pay the disputed invoices and that Transfair is entitled to damages in the amount of its unpaid invoices.

6.    The implied covenant of "good faith and fair dealing" does not rewrite the parties' agreement or impose new conditions on performance. *See Badgett v. Sec. State Bank*, 116 Wn.2d 563, 574, 807 P.2d 356 (1991) ("[t]he duty arises, if at all, in connection with contract terms"); *see also Metcalf Constr. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014).("the implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions"). Edsal did not prove any breach of the duty of good faith and fair dealing by Transfair.

**B.    PRE-JUDGMENT INTEREST AND ATTORNEYS FEES**

7.    "In admiralty, prejudgment interest must be granted unless peculiar circumstances justify its denial; whether the circumstances are sufficient to justify the denial is left to the discretion of the district court." *Dillingham Shipyard v. Associated Insulation Co.*, 649 F.2d 1322, 1328 (9th Cir. 1981). Prejudgment interest may not "amount[] to a penalty rather than compensation." *Columbia Brick Works, Inc. v. Royal*

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 13

*Ins. Co. of Am.*, 768 F.2d 1066,1068 (9th Cir. 1985). "[T]he measure of interest rates prescribed for postjudgment interest in 28 U.S.C. § 1961(a) is also appropriate for fixing the rate for prejudgment interest unless the equities of a particular case demand a different rate." *Id.* Courts have declined to apply the contractual rate of prejudgment interest where doing so may transform the award into a penalty. *See Seward Property, LLC v. Arctic Wolf Marine, Inc.*, No. 18-cv-78, 2022 WL 17414964, at *6 (D. Alaska Dec. 5, 2022) (finding "the large difference between the contractual rate and the Treasury bill would risk transforming a compensatory award into a punishment"); *O.W. Bunker Malta Ltd. v. MV TROGIR*, 602 Fed. App'x 673, 676 (9th Cir. 2015) ("the district court did not abuse its discretion by awarding prejudgment interest at a statutory rate rather than any contractual rate."); *Robbie's of Key West v. M/V Komedy III*, 470 F. Supp. 3d 1264, 1271 (S.D. Fla. June 23, 2020) (declining to apply contractual prejudgment interest rate because "rate of 18% is excessive."). For prejudgment interest accrued over multiple years, "the proper rate must be adjusted based on the year-end Treasury bill rate for each year." *Wells v. Global Tech Indus.*, No. 21-cv-2040, 2023 WL 7039963, at *3 (D. Nev. Oct. 25, 2023); *see also Seward Property*, 2022 WL 17414964, at *6.

8.    The Court declines to apply the T&C's interest rate of 18% per annum. Transfair has not shown by substantial evidence that the equities of this particular case demand a different rate than the rate set out in 28 U.S.C. § 1961(a). *See Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007) ("Generally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate."). While Transfair points to the T&C's contractual interest rate, it "does not explain why an 18% prejudgment interest rate is necessary to compensate it for its loss." *Robbie's*, 470 F. Supp. 3d at 1271. It also "points to no authority that would mandate application of the contractual rate in this instance."

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 14

*Seward Property*, 2022 WL 17414964, at \*6.  Without an affirmative showing that the 18% contractual interest rate is a reasonable measure of Transfair's loss, "the large difference between the contractual rate and the Treasury bill rate would risk transforming a compensatory award into a punishment." *Id.*   Accordingly, the Court will instead apply the pre-judgment interest rate set out in 28 U.S.C. § 1961(a).

9.     Pre-judgment interest is due and payable from the date that the respective invoices were overdue (which is end of the month plus 90 days plus 1 day from the date on the invoices). Because the amount due is a net amount, taking into account credits and payments, pre-judgment interest is calculated here from the date of the most recent unpaid invoice (Ex. 129, line 47) of 8/17/23.

10.     Transfair is also awarded its reasonable attorneys' fees and costs pursuant to the T&C.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 15

### III.    CONCLUSION

For the reasons previously stated, the Court finds that Transfair has met its burden of proof on the breach of damages claim. The Court finds in favor of the Transfair and awards Transfair $875,056.50 in damages plus reasonable attorneys' fees and pre-judgment interest.

Within 10 days of this order, Transfair shall file a proposed judgment including a prejudgment interest amount that is calculated in a manner consistent with this order. Transfair shall confer with Edsal regarding its prejudgment interest calculation and include a statement regarding whether Edsal agrees with Transfair's calculation, and if not, the nature of the disagreement.

Within 21 days of this order, Transfair shall file a motion for reasonable attorneys' fees and costs, noted for consideration pursuant to LCR 7(d)(3).

Dated this 28th day of May, 2026.

The Honorable Richard A. Jones
United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF
LAW – 16